```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5-10-13
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CORINNE SMITH, *individually and on behalf of*
*all others similarly situated,*

                                        Plaintiff,                    12 Civ. 6363 (PKC)

                -against-                                    MEMORANDUM AND ORDER

THE MANHATTAN CLUB TIMESHARE
ASSOCIATION, INC., NEW YORK URBAN
OWNERSHIP MANAGEMENT LLC, T. PARK
CENTRAL LLC, O. CENTRAL PARK LLC, IAN
BRUCE EICHNER, and STUART P. EICHNER,
                                        Defendants.
------------------------------------------------------------x

CASTEL, District Judge:

        Two years ago, Kelly J. Sheppard and several others brought a putative class

action asserting claims against The Manhattan Club Timeshare Association, Inc. and others

arising out of their purchase and ownership of flexible timeshare interests in The Manhattan

Club.  See Sheppard v. Manhattan Club Timeshare Ass'n, Inc., No. 11 Civ. 4362(PKC)

(S.D.N.Y. filed June 28, 2011).  In a Memorandum and Order, this Court dismissed the claims

in the Second Amended Complaint because they failed to state a claim for relief.  Sheppard v.

Manhattan Club Timeshare Ass'n, 11 Civ. 4362(PKC), 2012 WL 1890388 (S.D.N.Y. May 23,

2012).  No appeal was taken.  Instead, fifteen days after the order of dismissal, Sheppard's co-

owner of the timeshare interest, Corinne Smith, represented by the same lawyers who

represented Sheppard, commenced a putative class action in state court making largely the

same allegations and claims against the same defendants.

        As explained herein, the doctrine of res judicata forecloses this action brought

by Sheppard's co-owner because the two are in privity and every claim asserted here was

already adjudicated on the merits in Sheppard.  Therefore, the Court grants the defendants'

motions to dismiss and for judgment on the pleadings.  But, before reaching this conclusion, the Court must first assess whether removal of the action from state court was proper and whether this Court has subject matter jurisdiction.  The Court concludes that removal was proper and denies the plaintiff's motion to remand. The Court also denies the defendants' motion for sanctions.

BACKGROUND

This action is in all material respects a mirror image of <u>Sheppard</u>.  Familiarity with the Court's Memorandum and Order in that case is assumed.  <u>See</u> <u>Sheppard v. Manhattan Club Timeshare Ass'n, Inc.</u>, No. 11 Civ. 4362(PKC), 2012 WL 1890388 (S.D.N.Y. May 23, 2012).

To summarize: the plaintiffs in <u>Sheppard</u> brought a putative class action alleging that they were unlawfully induced by the defendants into the purchase of ownership interests in The Manhattan Club.  Specifically, they alleged that they were misled about the unit reservation process and reservation availability because The Manhattan Club unlawfully rented rooms to members of the general public.  The plaintiffs asserted five causes of action under New York law: fraud, breach of fiduciary duty, violation of New York General Business Law ("GBL") § 349, breach of implied covenant of good faith and fair dealing, and "Injunctive Relief."  <u>See</u> <u>id.</u>

On May 23, 2012, before a class was certified, this Court granted the defendants' motion to dismiss the Second Amended Complaint pursuant to Rules 12(b)(6) and 9(b), Fed.R.Civ.P.  <u>Id.</u>  Because the plaintiffs had filed three complaints and did not seek leave to replead in the event the motion to dismiss the Second Amended Complaint was granted, the Court directed the Clerk to enter judgment for the defendants.  <u>See</u> <u>id.</u> at *9.

Roughly two weeks later, on June 7, 2012, Plaintiff Smith commenced the instant putative class action in New York Supreme Court, New York County, asserting claims against The Manhattan Club Timeshare Association, Inc., New York Urban Ownership Management LLC, T. Park Central LLC, O. Park Central LLC (incorrectly named in the caption as "O. Central Park LLC"), Ian Bruce Eichner, and Stuart P. Eichner (collectively, the "Defendants").  On August 21, 2012, Defendants removed this action to federal court. (Notice of Removal (Docket # 1).)  The allegations and claims in the case now before me are, to a great extent, word-for-word copies of the allegations and claims asserted in Sheppard. The claims are based on the same facts and theory of the case, and are asserted against the same defendants.  Other than the identity of the class representative, the definition of the purported class in each case is, in all material respects, identical.

Subject matter jurisdiction is premised on the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1453 ("CAFA").  Smith moves to remand the action to state court, arguing that CAFA does not provide a basis for jurisdiction in this case.  Defendants, contending that removal was proper, move to dismiss the Complaint pursuant to Rule 12(b)(6), Fed.R.Civ.P., and move for judgment on the pleadings pursuant to Rule 12(c), Fed.R.Civ.P.[1]  Defendants also move for sanctions against Plaintiff and her counsel pursuant to Rule 11, Fed.R.Civ.P., and/or the Court's inherent authority.

DISCUSSION

I.      PLAINTIFF'S MOTION TO REMAND IS DENIED.

"CAFA amended the federal diversity jurisdiction statute to confer federal jurisdiction over class actions where: (1) the proposed class contains at least 100 members

---

[1] Answering defendants New York Urban Ownership Management LLC, T. Park Central LLC, and O. Park Central LLC move for judgment on the pleadings pursuant to Rule 12(c), Fed.R.Civ.P.  The non-answering defendants move to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P.

(the 'numerosity' requirement); (2) minimal diversity exists between the parties, (i.e., where 'any member of a class of plaintiffs is a citizen of a State different from any defendant'); and (3) the aggregate amount in controversy exceeds $5,000,000." Purdue Pharma L.P. v. Kentucky, 704 F.3d 208, 213 (2d Cir. 2013) (quoting 28 U.S.C. § 1332(d)(2)-(6)).  CAFA also "expanded federal jurisdiction to permit a defendant to remove to federal court a class action . . . notwithstanding the absence of the complete diversity . . . otherwise required for removal."  BlackRock Fin. Mgmt. Inc. v. Segregated Account of Ambac Assur. Corp., 673 F.3d 169, 175 (2d Cir. 2012) (citing 28 U.S.C. §§ 1332(d), 1453(b)); Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp., 603 F.3d 23, 26 (2d Cir. 2010)).

There are several exceptions to the federal jurisdiction conferred by CAFA.  28 U.S.C. § 1332(d)(3)-(4).  Under the mandatory "home state exception," a district court must decline to exercise jurisdiction over a class action in which two-thirds or more of the putative class members, and the primary defendants, are citizens of the state in which the action was originally filed.  28 U.S.C. § 1332(d)(4)(B).  Under the "discretionary exception," a district court "may, in the interests of justice and looking at the totality of the circumstances," decline to exercise jurisdiction over a class action in which greater than one-third but less than two-thirds of the putative class members, and the primary defendants, are citizens of the state in which the action was originally filed, based upon consideration of the enumerated factors.  28 U.S.C. § 1332(d)(3).

"Under CAFA, as under the traditional rule, the party asserting subject matter jurisdiction has the burden of proving it."  Blockbuster, Inc. v. Galeno, 472 F.3d 53, 59 (2d Cir. 2006).  Accordingly, the removing defendant bears the burden of establishing the existence of federal jurisdiction.  Id. at 57.  "However, once the general requirements of

CAFA jurisdiction are established, plaintiffs have the burden of demonstrating that remand is warranted on the basis of one of the enumerated exceptions."  Greenwich, 603 F.3d at 26.

Smith argues that Defendants have failed to sustain their burden of establishing federal jurisdiction under CAFA.  Smith does not dispute that the first and second jurisdictional elements under CAFA – numerosity and minimal diversity – are met.  (Pl. Reply Mem. Supp. Mot. to Remand 3 (Docket #25).)  Instead, Smith contends that jurisdiction is lacking because Defendants have failed to satisfy CAFA's amount-in-controversy requirement.  Smith further argues that remand is warranted on the basis of the home-state and/or discretionary exceptions.

a.  Defendants Have Established CAFA Jurisdiction.

To satisfy CAFA's amount-in-controversy requirement, a removing defendant "must show that it appears to a 'reasonable probability' that the aggregate claims of the plaintiff class are in excess of $5 million."  Blockbuster, 472 F.3d at 58.  When the complaint fails to allege a specific damages amount, and facts relating to the jurisdictional amount are challenged by the plaintiff, the defendant must establish the requisite amount in controversy "with 'competent proof' and 'justify [its] allegations by a preponderance of evidence.'" United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc., 30 F.3d 298, 305 (2d Cir. 1994) (alteration in original) (quoting McNutt v. General Motors Acceptance Corp. of Indiana, 298 U.S. 178, 189 (1936)).  In determining whether the removing defendant has met this burden, courts "look first to the plaintiffs' complaint and then to [the defendant's] petition for removal."  Mehlenbacher v. Akzo Nobel Salt, Inc., 216 F.3d 291, 296 (2d Cir. 2000) (citing Davenport v. Procter & Gamble Mfg. Co., 241 F.2d 511, 514 (2d Cir. 1957)).  "Where the pleadings themselves are inconclusive as to

the amount in controversy . . . courts may look outside those pleadings to other evidence in the record."  United Food, 30 F.3d at 305.

The Complaint does not make any specific damages demand, and the aggregate value of the claims is not clear from the face of the Complaint.  Accordingly, on March 15, 2013, the Court ordered Defendants to submit to the Court evidence establishing an amount in controversy above the CAFA threshold, and provided Smith an opportunity to respond.  (See Docket #38.)  On April 2, 2013, Defendants submitted the sworn affidavit of Scott L. Lager, Vice President of The Manhattan Club, with five exhibits annexed thereto.  (See Affidavit of Scott Lager, sworn to on April 1, 2013 (Docket #40).)

Having considered the evidence submitted by Defendants as well as the allegations in the Complaint, the Court finds that Defendants have shown by a preponderance of evidence that the amount in controversy exceeds the $5 million threshold.[2]  The Complaint alleges a class that includes all persons who purchased timeshare interests in The Manhattan Club from its inception in 1997 through the present.  (Notice of Removal, Ex. A (Verified Complaint, filed June 7, 2012) ("Compl.") ¶¶ 16, 59 (Docket #1).)  According to computer records maintained by The Manhattan Club in the ordinary course of business, during the period beginning January 1, 2001 (the earliest date for which The Manhattan Club has readily accessible, reliable computer records) and ending June 7, 2012 (the date the instant action was commenced), The Manhattan Club sold to members of the putative class a total of 14,696

---

[2] As discussed in the Court's Memorandum and Order dated March 14, 2013, the Court concludes that the preponderance-of-evidence standard is the proper standard to be applied in the instant case because Smith has challenged facts relating to the jurisdictional amount.  See Smith v. Manhattan Club Timeshare Ass'n, Inc., 12 Civ. 6363 (PKC), 2013 U.S. Dist. LEXIS 38760 (S.D.N.Y. Mar. 14, 2013).  Nonetheless, the Court notes that Defendants have also shown to a reasonable probability that the aggregate claims of the plaintiff class exceed the $5 million threshold.  See id.; see also Amoche v. Guarantee Trust Life Ins. Co., 556 F.3d 41, 49-50 (1st Cir. 2009) (noting that "the reasonable probability standard is, to our minds, for all practical purposes identical to the preponderance standard"); Meridian Sec. Ins. Co. v. Sadowski, 441 F.3d 536, 542 (7th Cir. 2006) (Easterbrook, J.) ("The phrase ["reasonable probability"] was coined as another way to put the established point that facts have been established only when supported by a preponderance of the evidence.").

timeshare interests for a total sales amount of $332,224,553.41.  (See Affidavit of Scott Lager, sworn to on April 1, 2013, ¶¶ 1, 10, Ex. 3 (Docket #40).)

The Complaint alleges that the timeshare interests of the putative class members have been "rendered virtually worthless" by Defendants' alleged deceptive business practices.  (Compl. ¶ 83.)  The Complaint similarly alleges that "[b]y reason of [Defendant's breach of the implied covenant of good faith and fair dealing], the fair market value of the TIMESHARE OWNERSHIP INTERESTS in THE MANHATTAN CLUB, possessed by Plaintiff and putative members of the class, has significantly diminished."  (Compl. ¶ 97.)  If, during a portion of the class period, members of the putative class paid over $330 million to purchase their timeshare interests, and if, as the Complaint alleges, those interests have been "rendered virtually worthless" by Defendant's alleged conduct, then the amount in controversy comfortable exceeds the $5 million threshold.  Indeed, even if the Court were to assume that the "rendered virtually worthless" and "significantly diminished" allegations implied a mere 5% reduction in the value of the timeshare interests – an exceptionally conservative assumption – the amount in controversy would still exceed $16.6 million, greater than three times CAFA's threshold.

Moreover, the Complaint alleges that "[n]either the Plaintiff nor putative class members would have . . . agreed to pay real estate taxes and Timeshare Charges, if they had known of Defendants' deceptive business practices as set forth in this pleading."  (Compl. ¶ 100.)  These taxes and fees are charged to timeshare-interest holders annually, but in 2012 alone, the combined amount of real estate taxes and Timeshare Charges owed by members of the putative class exceeded $31 million.  (See Affidavit of Scott Lager, sworn to on April 1,

2013, ¶ 16, Ex. 4.)  This further confirms the Court's conclusion that Defendants have satisfied CAFA's amount-in-controversy requirement.

Smith attempts to rebut Defendants' showing by arguing that "it must be presumed that if class certification was granted," the amount in controversy would be reduced by affirmative defenses, including the statute of limitations and release, and by other factors such as difficulties in proving damages, class members opting out of the class, and hypothetical settlements for less than $5 million.  (Pl. Reply Mem. Supp. Mot. to Remand 8.) In this Circuit, it is well-established that "affirmative 'defenses asserted on the merits' may not be used to whittle down the amount in controversy." Scherer v. Equitable Life Assurance Society of U.S., 347 F.3d 394, 397 (2d. Cir. 2003) (quoting Zacharia v. Harbor Island Spa, Inc., 684 F.2d 199, 202 (2d Cir. 1982).   Indeed, this is true "[e]ven where the complaint itself 'discloses the existence of a valid defense.'" Id. (quoting Ochoa v. Interbrew Am., Inc., 999 F.2d 626, 628 (2d Cir. 1993)); see also Zacharia, 684 F.2d at 202 ("The jurisdictional determination is to be made on the basis of the plaintiff's allegations, not on a decision on the merits.").  Thus, Defendants have proven by a preponderance of evidence that CAFA's amount-in-controversy requirement is satisfied.

b.  Plaintiff Has Not Established an Exception to CAFA Jurisdiction.

The proposed class contains at least 100 members, minimal diversity exists between the parties, and the aggregate amount in controversy exceeds $5,000,000.  Therefore, Defendants have established the existence of subject matter jurisdiction pursuant to CAFA. Accordingly, the burden shifts to Smith to prove that remand is warranted on the basis of one of CAFA's enumerated exceptions.  See Greenwich, 603 F.3d at 26.  Smith argues that the home-state and discretionary exceptions apply here.  These exceptions are applicable only if a

certain percentage of the plaintiff's putative class are citizens of New York.  The home-state exception applies only when "two-thirds or more of the members of all proposed plaintiff classes in the aggregate . . . are citizens of the State in which the action was originally filed," 28 U.S.C. § 1332(d)(4)(B), and the discretionary exception applies only when "greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate . . . are citizens of the State in which the action was originally filed," 28 U.S.C. § 1332(d)(3).

Smith has not established either exception.  Smith offers no evidence to support the proposition that, at the very least, greater than one-third of the members of the proposed class are citizens of New York.  Instead, Smith exclusively relies on speculation, capsulized in a quotation from her Memorandum of Law:

> The named Plaintiff is a citizen of New York.  She and other Timeshare Owners, who are believed to be primarily citizens of the State of New York, reside outside New York City, but frequently visit to take advantage of cultural and entertainment events. Defendants' marketing and advertising is largely directed at such New Yorkers: "The Manhattan Club prides itself on maintaining the highest quality in product and service so that you will experience a carefree stay each time you visit our resort" and "Imagine your own luxury suite in the heart of midtown Manhattan just for those times you want to be here."

(Pl. Mem. Supp. Mot. to Remand 9 (emphasis added) (Docket #8).)  Smith's contention that most timeshare interest holders are citizens of the State of New York who do not otherwise reside in the City of New York is pure speculation.  It is insufficient to establish that greater than one-third of the members of the putative class are citizens of New York.

Even if the Court were to find such conjecture sufficient to "create a rebuttable presumption that the citizenship requirement is met," Commisso v. PricewaterhouseCoopers LLP, No. 11 Civ. 5713(NRB), 2012 WL 3070217, at *4 (S.D.N.Y. July 27, 2012),

Defendants have submitted ample evidence to rebut this presumption.  According to residency records maintained by Defendants in the ordinary course of business, as of September 10, 2013, there were a total of 18,480 timeshare owners in The Manhattan Club.  (Affidavit of Scott Lager, sworn to on November 28, 2012, ¶ 4, Ex. A (Docket #24).)  Of that number, 3,826 reside in New York – a mere 20.7% of the total.  (Id.)  See Commisso, 2012 WL 3070217, at *4-*5 (explaining that a court's "determination of whether the threshold requirements for the applicability of the discretionary exception . . . are met 'should be made largely on the basis of readily available information,'" (quoting S.Rep. No. 109–14 at 44 (2005)), and then relying on residency data provided by defendant's human resources department to determine whether exception applies).

Smith has failed to demonstrate that greater than one-third of the putative class members are citizens of New York.  Therefore, Smith has not established that either CAFA exception applies.  Smith's motion to remand is denied.  The Court has subject matter jurisdiction over this action.

II.    DEFENDANTS' MOTIONS TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS ARE GRANTED.

To survive a motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P., "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "'[L]abels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Id. (quoting Twombly, 550 U.S. at 555).  Rather, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  In considering a Rule 12(b)(6) motion to dismiss, all non-conclusory factual allegations are

accepted as true, and all reasonable inferences are drawn in favor of the plaintiff.  See In re

Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) (per curiam).

"The standard for granting a Rule 12(c) motion for judgment on the pleadings

is identical to that of a Rule 12(b)(6) motion for failure to state a claim."  Patel v.

Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001) (collecting cases).

"To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter to 'state

a claim to relief that is plausible on its face.'"  Graziano v. Pataki, 689 F.3d 110, 114 (2d Cir.

2012) (quoting Twombly, 550 U.S. at 570).  All non-conclusory factual allegations are

accepted as true, and all reasonable inferences are drawn in favor of the plaintiff.  Patel, 259

F.3d at 126.

In analyzing a motion to dismiss, consideration is generally limited to the

factual allegations in the complaint.  Rule 12(d), Fed.R.Civ.P.  A court, however, may also

consider documents incorporated by reference or attached to the complaint as exhibits, as well

as items of which judicial notice may be taken.  Samuels v. Air Transp. Local 504, 992 F.2d

12, 15 (2d Cir. 1993).  Additionally, a court may in certain circumstances consider a

document "where the complaint relies heavily upon [the document's] terms and effect, [thus]

render[ing] the document integral to the complaint."  Chambers v. Time Warner, Inc., 282

F.3d 147, 153 (2d Cir. 2002) (internal quotations omitted).

a.  Plaintiff's Claims are Barred by Res Judicata.

The doctrine of res judicata, or claim preclusion, holds that a "final judgment

on the merits of an action precludes the parties or their privies from relitigating issues that

were or could have been raised in that action."  EDP Med. Computer Sys., Inc. v. United

States, 480 F.3d 621, 624 (2d Cir. 2007) (internal quotations omitted).  Res judicata bars a

subsequent action when: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 285 (2d Cir. 2000). A district court may dismiss a claim on res judicata grounds on a motion to dismiss. See Day v. Moscow, 955 F.2d 807, 811 (2d Cir. 1992).

        The instant action is barred by res judicata. Sheppard was adjudicated, by this Court, on the merits. Sheppard v. Manhattan Club Timeshare Ass'n, Inc., No. 11 Civ. 4362(PKC), 2012 WL 1890388, at *9 (S.D.N.Y. May 23, 2012) (dismissing the Second Amended Complaint in its entirety and with prejudice for failure to state a claim). See Berrios v. N.Y.C. Hous. Auth., 564 F.3d 130, 134 (2d Cir. 2009) ("[T]he dismissal for failure to state a claim is a final judgment on the merits and thus has res judicata effects."). Smith and Kelly J. Sheppard, the first-named plaintiff in Sheppard, are in privity, as they co-own the same timeshare interest. (Affidavit of Scott Lager, sworn to on Nov. 28, 2012, Ex. A (notarized deed signed by Plaintiff Smith and Kelly J. Sheppard showing that Smith and Sheppard co-own the ownership interest in the timeshare unit).)[3] See Litchfield v. Crane, 123 U.S. 549, 551 (1887) (defining privity as "mutual or successive relationship to the same rights of property"); Beras v. Carvlin, 313 Fed.Appx. 353, 355 (2d Cir. 2008) (summary order) ("Privity, traditionally, arose from a limited number of legal relationships in which two parties have identical or transferred rights with respect to a particular legal interest, chiefly: co-

---

[3] The Court properly considers this property deed without converting the motion to dismiss to one for summary judgment. Smith alleges in the Complaint that she owns a timeshare interest in The Manhattan Club, (Compl. ¶ 15), and all of the claims asserted by Smith are predicated on this ownership. The deed evidences this ownership. Therefore, the Complaint relies heavily upon the terms and effects of the deed. See Chambers, 282 F.3d at 153; see also Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.").

owners and co-tenants of property . . . ." (quoting <u>Headwaters Inc. v. United States Forest Serv.</u>, 399 F.3d 1047, 1053 (9th Cir. 2005))).  And every claim asserted here was previously raised in <u>Sheppard</u>.  (<u>Compare</u> Compl. ¶¶ 70-108 (asserting claims of violation of GBL § 349, breach of implied covenant of good faith and fair dealing, and "Injunctive Relief," owing to Defendants' allegedly deceptive practice of overselling the occupancy capacity of the Timeshare Units by renting them to the general public), <u>with</u> Second Amended Complaint ("<u>Sheppard</u> Compl.") ¶¶ 102-15, 144-48, 169-73, No. 11 Civ. 4362(PKC) (Docket #20) (asserting the same).)[4]

Plaintiff contends that res judicata is not applicable.  In support of this contention, Plaintiff lists four "major distinctions" between <u>Sheppard</u> and the instant case which purportedly demonstrate that "the Complaint now before this Court is materially different than the one earlier dismissed in <u>Sheppard</u>."  (Pl. Mem. Opp. Mot. to Dismiss 6 (Docket # 26 ).)

First, Smith notes that "<u>Sheppard</u> had 13 named plaintiffs and this case one [sic] different party."  (<u>Id.</u>)  This is a distinction without a difference.  In light of the privity between Smith and Sheppard, the fact that the parties are nominally different is of no consequence.  <u>See</u> <u>Monahan</u>, 214 F.3d at 285 ("Res judicata bars a subsequent action when . . . the previous action involved the plaintiffs or those in privity with them . . . .") (internal

---

[4] The Court takes judicial notice of the Second Amended Complaint because this Complaint is a public document.  <u>See</u> <u>Pani v. Empire Blue Cross Blue Shield,</u> 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6) . . . ."); <u>see also</u> <u>Kramer v. Time Warner Inc.,</u> 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."); <u>Motorola Credit Corp. v. Uzan</u>, 561 F.3d 123, 127 (2d Cir. 2009) (taking judicial notice of related proceedings).

quotations omitted).  Nor does it make any difference that no other person has joined Smith's suit.

Smith's second and third distinctions, respectively, are that "Sheppard alleged a cause of action for fraud and this [case] does not," and "Sheppard alleged a cause of action for breach of fiduciary duty and this [case] does not."  (Pl. Mem. Opp. Mot. to Dismiss 7.)  In other words, Plaintiff contends that res judicata does not apply because Plaintiff chose to only reassert three of the five claims that were adjudicated and dismissed with prejudice in Sheppard, as opposed to reasserting all five previously adjudicated claims.  It is the previously adjudicated claims that determine the preclusive effect, and the claims now asserted were previously adjudicated.  Smith's argument warrants no further discussion.

As for Plaintiff's final major distinction, Plaintiff alleges that here, unlike in Sheppard, "it is claimed that Defendants' deceptive acts and business practices include knowingly concealing, suppressing and omitting material facts from Plaintiff and the putative class, regarding the nature and extent of [Defendants'] rental program of Timeshare Units to the general public and the concomitant depletion of Timeshare Unit inventory from the Timeshare Project system."  (Id. (citing Compl. ¶ 74) (original emphasis).)  This purported distinction does not exist: paragraph 74 of the Complaint, on which the asserted distinction relies, is virtually indistinguishable from paragraph 109 of the Second Amended Complaint in Sheppard.  (Compare Compl. ¶ 74 ("Defendants' deceptive acts and business practices include knowingly concealing, suppressing and omitting material facts from Plaintiff and the putative class, regarding the nature and extent of their rental program of Timeshare Units to the general public and the concomitant depletion of Timeshare Unit inventory from the Timeshare Project system, which deprives and prevents qualified Timeshare Owners from

reserving, using and occupying Timeshare Units at designated intervals during Use Years."),

with Sheppard Compl. ¶ 109 ("Defendants' deceptive acts and business practices include

misrepresenting and knowingly concealing, suppressing and omitting material facts regarding

the nature and extent of their rental program of Timeshare Units to the general public and the

concomitant depletion of Timeshare Unit inventory from the Timeshare Project system, which

deprives and prevents qualified Timeshare Owners from reserving, using and occupying

Timeshare Units at designated intervals during Use Years.").

        Finally, the Court notes that even if the Complaint had asserted new or

substantively different claims, such claims would still be barred by res judicata.  No new facts

are alleged in the Complaint, and any new claims asserted would necessarily "arise from the

same transaction" as the claims asserted in Sheppard.  Cieszkowska v. Gray Line N.Y., 295

F.3d 204, 205 (2d Cir. 2002) (per curiam); see Marvel Characters, Inc. v. Simon, 310 F.3d

280, 286-87 (2d Cir. 2002) (discussing the transactional approach to res judicata employed in

the Second Circuit).

        b.  Plaintiff's Motion for Leave to Amend is Denied.

        Plaintiff seeks leave to amend the Complaint in order to substitute a new

named plaintiff, conceding that "because of the privity between Smith and Sheppard, the

instant Complaint could be dismissed on res judicata grounds."  (Pl. Mem. Opp. Mot. to

Dismiss 3).  Although "[a] number of courts in this Circuit have allowed substitution of

parties to be effected by amendments under Rule 15 . . . the preferred method is to consider

such motions under [Rule 21], which specifically allows for the addition and elimination of

parties."  Sheldon v. PHH Corp., No. 96 Civ. 1666(LAK), 1997 WL 91280, at *3 (S.D.N.Y.

March 4, 1997); <u>see</u> Rule 21, Fed.R.Civ.P. ("On motion or on its own, the court may at any time, on just terms, add or drop a party.").

In analyzing a request to add a party under Rule 21, "the Court is guided by the same standard of liberality afforded to motions to amend pleadings under Rule 15." <u>Momentum Luggage & Leisure Bags v. Jansport, Inc.</u>, No. 00 Civ. 7909(DLC), 2001 WL 58000, at *2 (S.D.N.Y. Jan. 23, 2001) (internal quotations omitted).  <u>Cf.</u> <u>Sheldon</u>, 1997 WL 91280, at *3 ("While plaintiffs' motion properly is considered under Rule 21 rather than Rule 15, nothing material turns on this distinction.").  Rule 15(a) provides that where leave of court is required for a party to amend its pleading, "[t]he court should freely give leave when justice so requires."  Rule 15(a), Fed.R.Civ.P.  Nonetheless, a "district court has broad discretion in determining whether to grant leave to amend."  <u>Gurary v. Winehouse</u>, 235 F.3d 792, 801 (2nd Cir. 2000).  "[M]otions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party."  <u>Burch v. Pioneer Credit Recovery, Inc.</u>, 551 F.3d 122, 126 (2d Cir. 2008) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)).  Although delay alone does not warrant denial, <u>see</u> <u>State Teachers Retirement Bd. v. Fluor Corp.</u>, 654 F.2d 843, 856 (2d Cir. 1981), a court "plainly has discretion to deny leave to amend 'where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant,'" <u>MacDraw, Inc. v. CIT Group Equip. Fin., Inc.</u>, 157 F.3d 956, 962 (2d Cir. 1998) (quoting <u>Cresswell v. Sullivan & Cromwell</u>, 922 F.2d 60, 72 (2d Cir. 1990)).

Taking these factors into consideration, the Court denies Smith's request to substitute a new named plaintiff.  At the time of filing, Smith knew that she co-owned her

flexible timeshare interest with Kelly Sheppard, considering that two years earlier they had signed the deed to the interest together.  (See Affidavit of Scott Lager, sworn to on Nov. 28, 2012, Ex. A (notarized deed signed by Smith and Sheppard on July 7, 2010).)  Smith's counsel, having represented the plaintiffs in Sheppard, knew that the claims asserted here had been previously asserted, and adjudicated on the merits.  Minimal legal research would have indicated that Smith's claims were barred by res judicata.  Cf. Priestley v. American Airlines, Inc., No. 89 CIV. 8265 (JMC), 1991 WL 64459, at *1 (S.D.N.Y. April 12, 1991) ("[L]eave to amend may be denied where the moving party knows or should have known of the facts upon which the proposed amendment is based, but failed to include them in the original pleading.") (citations omitted).

In fact, Defendants placed Smith's counsel on notice of the likely bar of res judicata on three separate occasions.  In a five-page letter dated November 5, 2012, Defendants informed Smith's counsel and the Court that "the named plaintiff here, Corinne Smith, co-owns her timeshare interest (which is the alleged basis for all of her claims in this action) with the first-named plaintiff in [Sheppard], Kelly Sheppard."  (Letter of November 5, 2012 at 2.)  This letter then explained why the instant action was barred:

> To determine whether res judicata bars a subsequent action, courts consider whether: "(1) the prior decision was a final judgment on the merits; (2) the litigants were the same parties; (3) the prior court was of competent jurisdiction; and (4) the causes of action were the same."  Corbett v. MacDonald Moving Servs., Inc., 124 F.3d 82, 87-88 (2d Cir. 1997).
>
> Here, the May 24 Judgment [in Sheppard] was a final adjudication on the merits by this Court on defendants' motion to dismiss.  Plaintiffs were afforded a full opportunity to oppose the motion, submitting a 24-page brief in opposition and other supporting materials.  Plaintiffs were permitted to amend their First Action Complaint twice before it was dismissed for failure to state a claim.  In addition, the parties in the two actions are the same –

the named defendants are identical, and plaintiff Corinne Smith is aligned in interest with and was fully represented in the First Action by her co-owner, Kelly Sheppard, one of the plaintiffs there.  They jointly own the very same timeshare interest at issue in both cases.  Lastly, the claims alleged here and the alleged basis for such claims – that defendants "improperly" rented timeshare units to the general public – are identical to those asserted in the First Action.

(Id. at 3.)  Defendants later orally confirmed the substance of this letter at the November 9, 2012 pre-motion conference.  Finally, these same points were reiterated in Defendants' motion to dismiss papers.  See In re GPC Biotech AG Securities Litigation, No. 07 Civ. 06728(DC), 2009 WL 5125130, at *4-*5 (S.D.N.Y. Dec. 29, 2009) (Chin, J.) (finding undue prejudice and denying leave to amend because plaintiff's "allegations should never have been made, and, at a minimum . . . should have been withdrawn much earlier" where "[d]efendants notified plaintiffs of the inaccuracies in the complaint on at least five occasions via letter before plaintiffs sought leave to amend").

Nevertheless, Smith failed to request leave to amend in a timely fashion. Instead, Smith waited to request leave until she filed her answering brief on December 28, 2012, needlessly forcing Defendants to fully brief both their motion to dismiss and their opposition to Plaintiff's baseless motion for remand.  See id. ("Plaintiffs' counsel could have – and should have – found the [grounds underlying the need to amend] well before they drafted and filed the complaint, and certainly before completion of the briefing of defendants' motion to dismiss. . . .  Even after defendants advised plaintiffs that critical allegations in the complaint were incorrect, plaintiffs did not take action to investigate until after defendants' motion was fully briefed.").

The length of the delay in this case must be viewed in context with Sheppard. Over the past two years, Defendants have had to defend against four insufficient complaints

-18-

filed by Smith and those in privity with her.  The <u>Sheppard</u> plaintiffs were permitted to amend their complaint twice, and were afforded a full opportunity to oppose the motion to dismiss the Second Amended Complaint.  In this fourth opportunity to state a claim to relief against Defendants, Smith had the added benefit of the Court's opinion in <u>Sheppard</u>, which methodically articulated the deficiencies of the Second Amended Complaint.  Nevertheless, Smith still filed a substantively identical and equally deficient complaint.  <u>Cf. Bellikoff v. Eaton Vance Corp.</u>, 481 F.3d 110, 118 (2d Cir. 2007) (affirming denial of leave to amend where "[t]he district court ruled . . . that the plaintiffs 'were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies,'" and noting that "[l]eave to amend is especially inappropriate where, as here, plaintiffs' proposed amendments [are] merely recycled versions of claims which had already fallen victim to a motion to dismiss" (quoting <u>In re Eaton Vance Mut. Funds Litig.</u>, 403 F. Supp. 2d 310, 318 (S.D.N.Y. 2005))).

Significantly, Smith has not offered the Court any explanation whatsoever for her failure to recognize the res judicata bar at the time of filing, or her subsequent delay in seeking leave to amend.  <u>See MacDraw, Inc. v. CIT Group Equip. Fin., Inc.</u>, 157 F.3d 956, 962 (2d Cir. 1998) ("The burden to explain a delay is on the party that seeks leave to amend."); 1 Michael C. Silberberg, Edward M. Spiro, <u>Civil Practice in the Southern District of New York</u> § 6:27 at 6-62 (1st ed. 2005) ("[T]he court may deny a motion to amend when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed, particularly when the movant offers no excuse for the delay.") (citations omitted).  Under these circumstances, the Court concludes that Defendants would be unduly prejudiced if Plaintiff was now given a fifth bite at the apple.  <u>See</u> <u>ATSI</u>

Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 108 (2d Cir. 2007) ("In ATSI I, ATSI submitted three amended complaints; in ATSI II, it submitted a complaint largely identical to ATSI I's third amended complaint. . . .  District courts typically grant plaintiffs at least one opportunity to [re-plead] . . . .  The district court did not abuse its discretion in declining to grant further leave to amend.").

Smith could have but did not seek leave to amend when the privity of Smith and Sheppard was called to Plaintiff's counsel's attention in the November 5 letter.  Had counsel done so, the burden on Defendants, and the judicial system, would have been greatly lessened.  Mindful of the Rule 15 standard, the Court concludes that the interests of justice in this case do not require granting Smith's request.  Smith's motion to amend is denied.

III.    DEFENDANTS' MOTION FOR SANCTIONS IS DENIED.

Rule 11(c) permits a district court to impose sanctions upon attorneys or parties who have violated Rule 11(b).  See Rule 11, Fed.R.Civ.P.; see generally Morley v. Ciba-Geigy Corp., 66 F.3d 21, 24 (2d Cir. 1995) (discussing Rule 11 sanctions).  "A pleading, motion or other paper violates [Rule 11(b)] either when it has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." Kropelnicki v. Siegel, 290 F.3d 118, 131 (2d Cir. 2002) (citations and quotations omitted).  If a district court finds that Rule 11(b) has been violated, it may impose appropriate sanctions, but "the decision whether or not to impose sanctions is a matter for the court's discretion." Perez v. Posse Comitates, 373 F.3d 321, 325 (2d Cir. 2004).

A party seeking sanctions pursuant to Rule 11 must serve the motion on its adversary, but must not file or present it to the court until at least twenty-one days after service.  See Rule 11(c)(2), Fed.R.Civ.P.  If, during this twenty-one day "safe-harbor" period, the adversary "withdraw[s] or appropriately correct[s]" the alleged violation, the adversary is not subject to Rule 11 liability.  Id.

In addition to imposing sanctions under Rule 11, a district court may impose sanctions pursuant to its inherent authority to supervise and control its own proceedings.  To impose such sanctions, "a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith – that is, 'motivated by improper purposes such as harassment or delay.'"  Eisemann v. Greene, 204 F.3d 393, 396 (2d Cir. 2000) (quoting Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 336 (2d Cir. 1999)).  The Second Circuit, "in recognizing the need for restraint, has always required a particularized showing of bad faith to justify the use of the court's inherent power."  U.S. v. Int'l Bhd. of Teamsters, 948 F.2d 1338, 1345 (2d Cir. 1991).

Defendants move for sanctions against Smith and her counsel on the ground that any reasonable inquiry would have shown that Smith's claims were barred by res judicata.[5]  Defendants served the Rule 11 motion on December 27, 2012, but, in accordance with Rule 11(c)(2), did not file it with the Court until January 29, 2013.  On December 28, 2012, Smith acknowledged the res judicata issue and requested leave to substitute a new named plaintiff, one who is not in privity with any of the named plaintiffs from Sheppard.

---

[5] Defendants do not move for sanctions on the ground that Smith's motion to remand is frivolous.  See Star Mark Management, Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 175 (2d Cir. 2012) ("Rule 11 and principles of due process require that the subject of a sanctions motion be informed of . . . the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense.  Indeed, only conduct explicitly referred to in the instrument providing notice is sanctionable.") (internal citations and quotations omitted).

Smith therefore sought to correct the alleged Rule 11 violation during the safe-harbor period, and is not liable for sanctions under Rule 11. See Team Obsolete Ltd. v. A.H.R.M.A. Ltd., 216 F.R.D. 29, 43-44 (E.D.N.Y. 2003) (finding plaintiffs sheltered from a Rule 11 motion because they sought leave to amend to correct the alleged violation within the safe-harbor period); Rates Technology Inc. v. Mediatrix Telecom, Inc., No. 05-CV-2755 (JS)(AKT), 2007 WL 1987787, at *3 (E.D.N.Y. 2007) ("[T]he movant may not properly bring the Rule 11 motion if the opposing party withdraws, corrects, or moves for leave to file an amended complaint within the safe-harbor period."). Defendants' motion for sanctions is denied.

## CONCLUSION

For the reasons discussed, Smith's motion to remand is DENIED. Defendants' motions to dismiss and for judgment on the pleadings are GRANTED. Defendants' motion for sanctions is DENIED. The Clerk of the Court is directed to terminate the motions and enter judgment for Defendants.


SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
      May 10, 2013